**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** and **STATE OF CALIFORNIA** *ex rel.* **MICHAEL STAHL** and **WILLIAM REYNOLDS,**<br><br>        Plaintiffs,<br><br>    v.<br><br>**ORTHOPEDIC ALLIANCE, LLC,** a California Limited Liability Corp.**;**<br>**ROGER WILLIAMS;**<br>**MARY SISLER WILLIAMS;**<br>**THOMAS FERRO, M.D.;**<br>**THOMAS FERRO, M.D. A MEDICAL CORPORATION,** a California Corp.**;**<br>**DAVINCI ORTHOPEDIC TECHNOLOGIES, LLC,** a California Limited Liability Corp.**;**<br>**DONN FASSERO, M.D.;**<br>**KOUROSH SHAMLOU, M.D.;**<br>**KOUROSH SHAMLOU, M.D., INC.,** a California Corp.**;**<br>**KEVIN PARK, M.D.;**<br>**KEVIN PARK, M.D., INC.,** a California Corp.**;**<br>**MILIND PANSE, M.D.;**<br>**MASKO HOLDINGS, LLC ,** a California Limited Liability Corp.**;**<br>**UCHENNA RAPHAEL NWANERI, M.D.;**<br>**RUSSELL TODD NEVINS, M.D.;**<br>**RANDY F. DAVIS, M.D.;** and<br>**ELLIOTT CLEMENCE, M.D.,**<br><br>        Defendants. | Case No.   Case: 1:22−mc−00019<br>Assigned To : Lamberth, Royce C.<br>Assign. Date : 2/1/2022<br>Description: Misc. (O−DECK) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELATORS'
MOTION TO COMPEL MURPHY, FALCON & MURHPY TO COMPLY WITH
<u>SUBPOENA FOR PRODUCTION OF DOCUMENTS</u>**

**INTRODUCTION**

This motion arises from a third-party discovery dispute in connection with a Federal

False Claims Act case pending in the U.S. District Court for the Central District of California.

1

The third party at issue is Murphy, Falcon & Murphy ("MFM"), a Baltimore-based law firm that obtained unique and critically important records relating to Defendants Roger Williams and Orthopedic Alliance, LLC, through Williams's bankruptcy proceedings in 2018. In May 2021, Relators issued a subpoena to MFM requesting that it produce those documents, but MFM refuses to produce them without redacting patient names because they want to protect patient names, even though there is a HIPAA-compliant protective order in place. Because the patient names are critical to identifying false and fraudulent claims that Relators allege Defendants presented or caused to be presented to the government and private insurers, Relators move to compel production of the records without redaction under Fed. R. Civ. P. 45.

## BACKGROUND

This matter concerns causes of action under the Federal False Claims Act, California False Claims Act, and California Insurance Frauds Prevention Act. (Declaration of Amanda Plowman ("Plowman Decl.") ¶2.) Relators allege Defendant Roger Williams was the mastermind behind an illegal kickback scheme which paid doctors more than $2 million dollars in kickbacks to use Orthopedic Alliance, LLC ("Orthopedic Alliance") knee and hip replacement surgical hardware under the pretense of "Design & Development" and "Intellectual Property" agreements, even though Orthopedic Alliance did not design, develop, or manufacture the hardware it distributed. (*Id.*) Rather, Orthopedic Alliance repackaged imported hardware and concealed the names of the manufacturers so that it could charge more as if it were supplying higher-grade domestic hardware. (*Id.*) As a result of the kickback scheme, Williams and Orthopedic Alliance (which Williams owned, operated, and controlled) caused hundreds of false claims to be submitted to Medicare, Medicaid, and private insurance associated with the hardware. (*Id.*) For Relators to prove these claims, they need to trace Orthopedic Alliance

2

hardware to patients whose claims were presented to Medicare, Medicaid, and private insurance. (*Id.*)

Relators became aware of bankruptcy matter *In re Roger Karl Williams*, Case No. 6:13-bk-16953-SY, venued in U.S. Bankruptcy Court, Central District of California, Riverside Division. (Plowman Decl. ¶3.) In that matter, the bankruptcy trustee made a motion to abandon and destroy books and records of the debtor. (*Id.*) Based on filings associated with its motion, numerous records that the trustee sought to abandon and destroy concerned Williams, Orthopedic Alliance, as well as another corporation that Williams owned, operated, and controlled, Spinal Solutions, LLC, which Relators allege was a sham distributor of surgical spinal hardware. (*Id.*) MFM, which represented the University of Maryland Medical System ("UMMS") and the University of Maryland Baltimore Washington Medical Center ("BWMC"), then filed an opposition to the destruction of the records stating, "While the Spinal Solutions' and Orthopedic Alliance's records in their current form are unlikely to answer all the questions, there is no doubt that they will provide important information about the suppliers of Spinal Solutions and Orthopedic Alliance, the products supplied, and the dates Spinal Solutions assembled those products into the kits supplied to BWMC. **There is no other identifiable source for the records of these two companies**." (Plowman Decl. ¶4 & Exhibit A, Page 6, lines 16-21 [emphasis added].) MFM eventually obtained a digital copy of the records by stipulation. (Plowman Decl. ¶5 & Exhibit B.)

In May 2021, Relators subpoenaed MFM for the records MFM obtained from Williams's bankruptcy proceeding, as well as all agreements between MFM and Orthopedic Alliance and all documents and communications related to Defendants Roger Williams, Mary Williams, and Orthopedic Alliance. (Plowman Decl. ¶6 & Exhibit C.) The place of compliance for the

subpoena is located in Washington, D.C. (*Id.*) Between May and October 2021, counsel for Relators met and conferred with MFM several times by email and telephone and extended the time for MFM to file objections to try to resolve the matter, but MFM has consistently refused to produce the subpoenaed records unless patient names are redacted. (Plowman Decl. ¶7 & Exhibit D.) During the meet-and-confer discussions, Relators were advised by the bankruptcy trustee that the U.S. Department of Justice and Federal Bureau of Investigation seized Williams's bankruptcy records, including the records of which MFM obtained a digital copy. (Plowman Decl. ¶8.) Accordingly, there is no source for these documents other than the U.S. government, which requires a showing that Relators have first exhausted all other sources to obtain the information.[1] (*Id.*)

During meet-and-confer discussions between Relators and MFM, MFM stated that the bankruptcy records at issue were ready for upload in Relativity e-discovery software, but that it will not produce the records unless Relators agree to the redaction of the patient names in the documents. (Plowman Decl. ¶ 9.) MFM stated the purpose of the redactions is to prevent the possibility that unauthorized persons might improperly access the documents in violation of the protective order in this action ("Protective Order") and use the unredacted patient names to market to the patients or solicit them as clients, which could in turn result in one or more of the patients bringing a lawsuit against MFM's client, UMMS. (*Id.*) MFM represented that UMMS was involved in litigation that stemmed from patient information improperly obtained from a lawsuit concerning Spinal Solutions in Los Angeles. (*Id.*) According to MFM, one or more attorneys who should <u>not</u> have had access to a database of documents in the lawsuit extracted the documents and used them to market and solicit clients, which led to several lawsuits against

---

[1] *See generally United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

UMMS. (*Id.*) MFM thus took the position that the Protective Order in this action is insufficient to permit production of unredacted records because a protective order was also present in the Spinal Solutions matter, yet unintended individuals still managed to obtain the unredacted records in that case. (*Id.*)

Relators cannot agree to redacted patient names because the names are essential to tracing the kickbacks to surgical hardware implanted into patients whose claims were presented to Medicare, Medicaid, and private insurers. (Plowman Decl. ¶10.) More specifically, Relators need evidence showing which patients had Orthopedic Alliance hardware implanted, which hardware was used, how much the hardware cost, how much Orthopedic Alliance charged, and to what payor. (*Id.*) The HIPAA-compliant Protective Order in place fully and specifically addresses MFM's stated concerns about protecting patient information and the underlying documents, such as marking the document as "Confidential" to be used only within the instant action and destroying the records at the close of litigation. (Plowman Decl. ¶11 & Exhibit E.) Having reached an impasse, MFM served objections and Relators seek to compel compliance with the subpoena without redaction. (Plowman Decl. ¶12 & Exhibit F.) Through these meet-and-confer discussions, Relators have complied with Local Rule 7(m) and anticipate MFM filing an Opposition to the Motion. (Plowman Decl. ¶14.)

**ARGUMENT**

Relators move to compel production under Fed. R. Civ. P. 45 (d)(2)(B)(i), which provides that, "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." The place of compliance identified on the subpoena to MFM is located in the

District of Columbia. *See* Exhibit C at 1. Accordingly, this Court is the appropriate venue to hear the motion for an order compelling MFM to produce the documents requested.

Relators request that the Court order MFM to produce the documents without redaction because the patient names are critical to relating Defendants' illicit conduct to claims presented to the government and private insurers, and because there is a HIPAA-compliant qualified protective order in place to sufficiently protect patient information. Further, MFM has not met its burden in establishing any privilege that would otherwise warrant withholding the records.

**A.    The Patient Names Are Necessary to Trace the Kickbacks to Fraudulent Claims.**

Because the Relators' causes of action provide per claim remedies (penalties, assessments, and damages), obtaining evidence of kickbacks without the personal patient information needed to tie them to individual claims renders the evidence virtually useless.

Under each of the causes of action Relators assert, the fraudulent conduct must relate to fraudulent claims. Under the Federal False Claims Act, a person is liable to the United States Government for a civil penalty and three times the damages the Government sustained for each instance in which the person knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(1)(1)(A). Similarly, under the California False Claims Act, a person is liable to the State of California for a civil penalty and three times the amount of damages the Government sustained for each instance in which the person knowingly presented, or causes to be presented, a false or fraudulent claim for payment or approval. Cal. Gov. Code § 12651(a)(1). Finally, under the California Insurance Frauds Act a person is liable for a civil penalty and an assessment of not more than three times the amount of each claim for compensation for each false or fraudulent claim presented to an insurance company. Cal. Ins. Code § 1871.7(b).

Thus, Relators must trace the Orthopedic Alliance hardware implanted in patients to claims presented to Medicare, Medicaid, and private insurers, which is feasible only if the records include personal identifying information like patient names. Without this information, Relators would have no way of tying the fraudulent conduct (i.e., paying doctors kickbacks so they would use Orthopedic Alliance surgical hardware) to claims Defendants presented to Medicare, Medicaid, and private insurers, and no way of calculating per claim penalties, damages, and assessments.

While MFM generally objects to all the document demands as overly burdensome, they have made no showing as to why producing records it copied from Williams's bankruptcy proceeding is particularly burdensome relative to their relevance. These records are already in digital format as the bankruptcy stipulation allowed access for copying and digitizing (*see* Exhibit B ¶¶2-4), and MFM advised Relators during meet-and-confer discussions that the records were ready for upload in Relativity e-discovery software (Plowman Decl. ¶9). Further, MFM represented in their opposition to destroying the records in the bankruptcy proceeding that there is no other identifiable source for the records; Relators are likewise unaware of any other way to obtain the records other than seeking them from government entities. (*Id.* ¶¶4, 8.) As to any other records requested in the subpoena, MFM has not represented the scope of those other documents or provided any specific representation about the burden involved in producing them. (Plowman Decl. ¶13.) In any event, the key issue the parties have been unable to resolve is the redaction of the patient names.

**B.      There Is a HIPAA-Compliant Protective Order in Place Sufficient to Protect Patient Information.**

While the Health Insurance Portability and Accountability Act (HIPAA) generally

restricts health care entities from disclosure of protected health information ("PHI"), 45 C.F.R.

§ 164.512(e) establishes procedures for the use of PHI in judicial and administrative

proceedings, including disclosure of unredacted PHI. In addition, the Protective Order in the

action is HIPAA-compliant and provides further measures to protect the disclosure of documents

beyond the action.

A covered entity may disclose protected health information without an individual's

authorization in judicial and administrative proceedings by Court Order or subject to a qualified

protective order. 45 C.F.R. § 164.512(e)(1)(i) and (ii)(B). Under those regulations, a covered

entity may disclose protected health information during a judicial proceeding in response to a

court order if the covered entity discloses only the protected health information expressly

authorized by such order. *Id.* § 164.512(e)(1)(i). Moreover, in response to a discovery request or

subpoena, the covered entity may disclose PHI if the covered entity receives satisfactory

assurance from the party seeking the information that reasonable efforts have been made by such

party to secure a qualified protective order that meets certain requirements. *Id.*

§ 164.512(e)(1)(ii)(B). Such a protective order must prohibit the parties from using or disclosing

the protected health information for any purpose other than the litigation for which such

information was requested and requires the return or destruction of the protected health

information, including all copies, at the end of the litigation. *Id.* § 164.512(e)(1)(v).

Here, there is a Protective Order in place that is HIPAA-compliant and addresses MFM's

concerns regarding protecting patient information. (Plowman Decl. ¶5 & Exhibit E.) Paragraph

7.1 of the Protective Order limits the use of "Protected Material" to prosecuting, defending, or

attempting to settle this litigation, and section XIV requires that the material be returned or

destroyed within 60 days after the final disposition of the action. (*Id.*) Furthermore, the

Protective Order permits documents to be marked as "CONFIDENTIAL" where a party believes in good faith that the documents should be protected from public disclosure. (*Id.*) Thus, the qualified Protective Order complies with HIPAA and ensures that the patient records will remain private by court order.

It would be contrary to the governing HIPAA regulations discussed above to permit MFM to withhold critical information from Relators simply because some other individuals improperly accessed and used protected information from documents produced in some other action, in violation of a protective order. It would also be contrary to basic notions of fairness to punish Relators for the wrongdoing of others beyond their control by depriving Relators of critical information they need to prove up their claims. Defying a duly served subpoena is not the proper remedy for MFM's hypothetical concerns that producing PHI in this action might somehow be disclosed in violation of the Protective Order through a speculative chain of events. Relators have secured a qualified HIPAA-compliant Protective Order to prevent disclosure of precisely the kind of PHI at issue here. Accordingly, the requested documents should be disclosed without redaction.

**C.      MFM Asserts Attorney-Client Privilege and Attorney Work-Product Doctrine Without Describing the Nature of the Withheld Documents or the Basis for Privilege—Nor Is there Evidence to Suggest that it Could.**

MFM asserts attorney-client privilege and attorney work-product doctrine to every request, even for the documents requested from Roger Williams's bankruptcy proceeding. As the party asserting a privilege or work-product protection, MFM bears the burden of establishing that the privilege applies. *United States v. All Assets Held at Julius Baer & Co.,* 169 F. Supp. 3d 54, 56 (D.D.C. 2015). MFM cannot meet its burden with respect to the bankruptcy documents

because, as far as Relators are aware, MFM never had an attorney-client relationship with Williams.

Moreover, MFM has failed to meet its initial burden in asserting privilege because it neither describes the nature of the withheld documents nor explains why the privilege applies. This is contrary to the well-settled rule that a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. Fed. R. Civ. P. 45(e)(2)(A)(ii). A party cannot meet its burden with conclusory statements, generalized assertions, and unsworn averments of its counsel, but rather must actually adduce competent evidence in support of its claims. *FTC v. Boehringer Ingelheim Pharm., Inc.,* 180 F. Supp. 3d 1, 16 (D.D.C. 2016).

MFM has simply not met its burden here. It has failed to establish that a privileged relationship even existed or exists, let alone produce a privilege log supported by competent evidence that would allow Relators to assess any assertions of purported privilege. Further, Relators fail to see how MFM could possibly assert a work product privilege over documents that it digitally copied. To the extent MFM is asserting work product over other documents requested in the subpoena, it has failed to substantiate this with any specificity, as its objections were boilerplate and untailored to the requests.

## CONCLUSION

Relators request that the Court grant their motion to compel compliance and that Murphy, Falcon & Murphy be ordered to produce the records requested in the subpoena without redaction. If Murphy, Falcon & Murphy continues to express request-specific concerns of work

product or attorney-client privilege that the Court deems legitimate, Relators request that the

Court order MFM to provide forthwith a privilege log compliant with the Federal Rules of Civil

Procedure.

January 31, 2022                                      Respectfully submitted,



Andrew F. Kirtley (D.C. Bar No. 1031358)
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
akirtley@cpmlegal.com

Carlos Urzua (CA Bar No. 303176)[2]
COTCHETT, PITRE & McCARTHY, LLP
2716 Ocean Park Blvd., Suite 3088
Santa Monica, California 90405
Telephone: (310) 392-2008
Facsimile: (310) 392-0111
curzua@cpmlegal.com

Amanda Plowman (CA Bar No. 317462)
Joseph F. Hasegawa (CA Bar No. 238990)
KNOX RICKSEN, LLP
2033 N. Main Street, Suite 340
Walnut Creek, California 94596
Telephone: (925) 433-2500
Facsimile: (925) 433-2505
amp@knoxricksen.com
jfh@knoxricksen.com

---

[2] Under Local Civil Rule 83.2(c)(1), attorneys Carlos Urzua, Amanda Plowman, and Joseph F. Hasegawa join of record Mr. Kirtley, a member in good standing of the Bar of this Court.